**WARNING: NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").**

**CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT**

**NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.**
This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

## Residential Contract of Sale

# Contract of Sale made as of FEBRUARY 16th 2019 BETWEEN

**484 Main Street Realty Corp.**
Address: (c/o Brian McCaffrey, Esq. 88-18 Sutphin Blvd. Jamaica, N.Y. 11435)
Social Security Number/ Fed. I.D. No(s): xxx-xx-xxx                    hereinafter called "Seller" and

**Courtney Smith Wiesmore** (or LLC to be formed)
Address: 166 Monterey Rd. Pasadena CA 91030
Social Security Number/ Fed. I.D. No(s): xxx-xx-xxx                    hereinafter called "Purchaser".

# The parties hereby agree as follows:

1. **Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:

Street Address: 484 -488 Main Street, Beacon, New York 12508
Tax Map Designation:   Sec. 6054 Block 37  Lot 103737

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

2. **Personal Property.** ~~This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, chandeliers, bathroom and kitchen cabinets and counters, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, built-in microwave oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below (strike out inapplicable items).~~ Only appliances that are being included are refrigerator and stove.

Excluded from this sale are furniture and household furnishings and, Chandeliers in dining room and foyer, vertical blinds in living room, table and chairs on patio and on deck, patio swing set, portable microwave, area rug in dining room and foyer.

3. **Purchase Price.** The purchase price is     $1,050,000.00
payable as follows:
(a) on the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt or which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"):

$50,000.00

(b) at closing upon transfer of title

$475,000.00

(c)
by a purchase money note and mortgage (the "Purchase Money Mortgage" from Purchaser to Seller in the sum of:

$~~525,000.00~~
323,000

4. **Existing Mortgage.** Transfer of title to the Premises is subject to two "existing mortgages" held by Dutchess County in the sums of $60,000.00 and $100,000.00 (annexed hereto as **EXHIBIT A**). The terms agreed to by Dutchess County by which the Existing Mortgages must be repaid are annexed hereto **EXHIBIT B**.
(a) The Premises shall be conveyed subject to the continuing lien of the existing mortgage, ~~which is presently payable, with interest at the rate of _____ percent per annum, in monthly installments of $_____ which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on~~
(b)

5. **Purchase Money Mortgage.** (*Delete if inapplicable*) If there is to be a purchase money mortgage as indicated in paragraph 3(c) above:
(a) The Purchase Money Mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing

1

the mortgage recording tax and recording fees ~~and the attorney's fees~~ in the amount of $ **TBD**. A Memorandum of the Terms of the Purchase Money Mortgage is annexed hereto as **EXHIBIT C**.

(b) The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the Existing Mortgages and any extensions, modifications, replacements or consolidations of the existing mortgage, ~~provided that (i) the interest rate thereof shall not be greater than _____ percent per annum and the total debt service thereunder shall not be greater than $ _____ per annum,~~ and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefor, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.

6. Downpayment in Escrow. (a) Brian McCaffrey Esq. ("Escrowee") shall hold the Downpayment in escrow in a segregated bank account at

**Chase Bank Sutphin Blvd. Jamaica, NY 11435**

until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall hold the Downpayment in a non-interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, non-appealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against of all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(f) The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

7. **Acceptable Funds.** All money payable under this contract, unless otherwise specified, shall be paid by:

(a) Cash, but not over $ 1,000.00;

(b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser;

(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $ 500.00; and

(d) As otherwise agreed to in writing by Seller or Seller's attorney.

8. ~~**Mortgage Commitment Contingency.** (*Delete paragraph if inapplicable. For explanation, see* Notes on Mortgage Commitment Contingency Clause.) (a) The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before of Thirty **(30)** days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 8(j) (the "Commitment Date"), whichever is later, of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $ _____ for a term of at least thirty (30) years (or such lesser sum or shorter term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). To the extent a Commitment is conditioned on the sale of Purchaser's current home, payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment" hereunder until an appraisal is approved (and if that does not occur before the Commitment Date, Purchaser may cancel under subparagraph 8(e) unless the Commitment Date is extended). Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this contract even if the lender fails or refuses to fund the loan for any reason.

(b) Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in subparagraph 8(a) and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof.

(c) (*Delete this subparagraph if inapplicable*) Prompt submission by Purchaser of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law ("Mortgage Broker") shall constitute full compliance with the terms and conditions set forth in subparagraph 8(b)(i), provided that such Mortgage Broker promptly~~

2

~~submits such application to such Institutional Lender(s). Purchaser shall cooperate in good faith with such Mortgage Broker to obtain a Commitment from such Institutional Lender(s).~~

~~(d) If all Institutional Lenders to whom applications were made deny such applications in writing prior to the Commitment Date, Purchaser may cancel this contract by giving Notice thereof to Seller, with a copy of such denials, provided that Purchaser has complied with all its obligations under this paragraph 8.~~

~~(e) If no Commitment is issued by an Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, provided that such Notice includes the name and address of the Institutional Lender(s) to whom application was made and that Purchaser has complied with all its obligations under this paragraph 8.~~

(f) If this contract is canceled by Purchaser pursuant to subparagraphs 8(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27.

(g) If Purchaser fails to give timely Notice of cancellation or if Purchaser accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph 8.

(h) If Seller has not received a copy of a commitment from an Institutional Lender accepted by Purchaser by the Commitment Date, Seller may cancel this contract by giving Notice to Purchaser within 5 business days after the Commitment Date, which cancellation shall become effective unless Purchaser delivers a copy of such commitment to Seller within 10 business days after the Commitment Date. After such cancellation neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser (provided Purchaser has complied with all its obligations under this paragraph 8) and except as set forth in paragraph 27.

(i) For purposes of this contract, the term "Institutional Lender" shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any other state; foreign banking corporation licensed by the Superintendent of Banks of New York or regulated by the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.

(j) For purposes of subparagraph 8(a), Purchaser shall be deemed to have been given a fully executed copy of this contract on the third business day following the date of ordinary or regular mailing, postage prepaid.

9. **Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d) Real estate taxes that are a lien, but are not yet due and payable; and

(e) The other matters, if any, including a survey exception, set forth in a Rider attached.

10. **Governmental Violations and Orders.** (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date hereof by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

(b) (*Delete if inapplicable*) ~~All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.~~

11. **Seller's Representations.** (a) Seller represents and warrants to Purchaser that:

(i) The Premises abut or have a right of access to a public road;

(ii) Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

(iii) Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");

(iv) The Premises are not affected by any exemptions or abatements of taxes; and

(v) Seller has been known by no other name for the past ten years, except

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

12. **Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(e)), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

13. **Insurable Title.** Seller shall give and Purchaser shall accept such title as any reputable title insurer licensed to do business in the State of New York shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

14. **Closing, Deed and Title.** (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a Bargain and Sale Deed with Covenants deed in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

(b) If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant

3

Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

**15. Closing Date and Place.** Closing shall take place at the office of: sellers attorney, at 10:00 AM on or about, **February 28, 2019** or, upon reasonable notice (by telephone or otherwise) by Purchaser, at the office of Purchasers' lender's attorneys.

**16. Conditions to Closing.** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:
(a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.
(b) The delivery by Seller to Purchaser of a **(Certificate of Occupancy to be provided) Premises occupied and existing as four (4) residential and two (2) commercial units.**

∶
(c) The delivery by Seller to Purchaser of a certificate stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA or a withholding certificate from the I.R.S. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.
(d) The delivery of the Premises and all building(s) and improvements comprising a part thereof in AS-IS condition, vacant and free of leases or tenancies, together with keys to the Premises.
(e) All plumbing (including water supply septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.
(f) If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.
(g) The delivery by the parties of any other affidavits required as a condition of recording the deed.

**17. Deed Transfer and Recording Taxes.** At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

**18. Apportionments and Other Adjustments; Water Meter and Installment Assessments.** (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing:
(i) taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; (iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.
(b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.
(c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.
(d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.
(e) Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

**19. Allowance for Unpaid Taxes, etc.** Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after Closing, provided that official bills therefor computed to said date are produced at Closing.

**20. Use or Purchase Price to Remove Encumbrances.** If at Closing there are other liens or encumbrances that Seller is obligated to payor discharge, Seller may use any portion of the cash balance of the purchase price to payor discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear or such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

**21. The Examination; Seller's Inability to Convey; Limitations of Liability.** (a) Purchaser shall order an examination of title in respect or the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.
(b)(i) If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects. Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing

4

mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

(c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser, for updating the existing survey of the Premises or of a new survey

**22. Affidavit as to Judgments, Bankruptcies, etc.** If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

**23. Defaults and Remedies.** (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

**24. Purchaser's Lien.** All money paid on account of this contract, and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

**25. Notices.** Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or

(b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or

(c) with respect to ¶7 (b) or ¶20, sent by fax to the party's attorney. Each Notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. A copy of each Notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries.

**26. No Assignment.** This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

**27. Broker.** Seller and Purchaser each represents and warrants to the other that it has not dealt with any broker in connection with this sale other than: **GATE HOUSE REALTY Lambs Hill, LLC** ("Brokers") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

**28. Miscellaneous.** (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d) The captions in this contract are for convenience or reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This Subparagraph shall survive Closing.

(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h) This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

(i) If applicable, the complete and fully executed disclosure of information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

Contract continued on Rider attached hereto. *Delete if inapplicable.* NONE

**In Witness Whereof,** this contract has been duly executed by the parties hereto.

**In Witness Whereof**, this contract has been duly executed by the parties hereto.

_____ 2/15/19   _____ 2-15-19
*Seller*                Date            *Purchaser*              Date

_____          _____
*Seller*                Date            *Purchaser*              Date

**Attorney for Seller:**  
Brian McCaffrey Attorney at Law, P.C  
88-18 Sutphin Blvd., 1st Floor  
Jamaica, New York, 11435  
Tel.: 718-480-8280  
Fax: 718-480-8279  
info@mynylawfirm.com

**Attorney for Purchaser:**  
Paul Supple, Esq.  
5 Cliff St.  
Beacon, N.Y. 12508  
Tel.: 845- 831-1234  
Fax:  
paul@lyons-supple.com

Receipt of the downpayment is acknowledged and the undersigned agrees to act in accordance with the provisions of paragraph 6 above.

_____

*Escrowee Brian McCaffrey Esq.*

# PURCHASER'S RIDER TO CONTRACT OF SALE

Notwithstanding anything to the contrary contained in the Contract of Sale, it is hereby agreed by and between the parties as follows:

## 1. TITLE

### A. TITLE INSURANCE

Title shall be such that a title company chosen by Purchaser shall approve and insure subject only to the standard title exceptions.

### B. TITLE OBJECTIONS/SELLER'S AFFIDAVIT

If a search of the title discloses judgments, bankruptcies or other liens against other persons having names the same or similar to that of Seller, Seller will, on request, deliver to Purchaser an affidavit showing that such judgments, bankruptcies or other liens are not against Seller in form sufficient to permit Purchaser's title company to omit any exception related thereto.

### C. EASEMENTS, RESTRICTIONS, ZONING, ETC.

The premises are sold and are to be conveyed subject to sewer, water, gas, electric, telephone and other utility easements, rights of way and restrictions of record, and further subject to building and zoning ordinances of the county, town or village in which the premises lie, provided the same do not:

    (ii)     render title unmarketable,

    (iii)    threaten the continued existence of the improvements thereon,

    (iv)    substantially reduce the useable area of the premises.

### D. SURVEY

The premises shall be sold and conveyed subject to any state of facts an accurate survey discloses, provided the same do not disclose any condition that would otherwise render title unmarketable. This contract shall be null and void and Seller shall immediately

refund to Purchaser all sums paid to Seller under this contract and reimburse Purchaser for the cost of survey and title search:

   (i)  that improvements included in the sale are not located within the perimeter boundaries of the premises or violate by reason of location, size or other dimension, any condition, restriction of record or zoning ordinance; or,

     (ii)  a substantial diminution of land area from that described in this contract or the broker's listing;

     (iii)  survey encroachments; and

     (iv)  seller is unable to correct such condition.

     (v)  The premises shall be transferred in accordance with the "subject to" provisions of the Contract provided they do not render title uninsurable (except for standard utility easements and monetary liens which will be discharged by Seller at or prior to closing).

## 2. CERTIFICATE OF OCCUPANCY/MUNICIPAL VIOLATIONS

  A.  This contract is contingent upon the existence of a valid certificate of occupancy for the premises (including additions, improvements and alterations to premises) and a certification from the municipality that there are no violations of any ordinances, local laws or other rules and regulations pertaining to the subject premises. In the event the premises were constructed prior to the adoption of a zoning ordinance and/or building code, the municipality must certify that the premises are exempt from any certificate requirements. In the event a Certificate of Occupancy or Compliance is required, it shall be Seller's obligation, at Seller's expense, to undertake all necessary work to obtain a valid Certificate of Occupancy or Compliance prior to closing;. If exempt, the premises, notwithstanding such exemption, must be legally useable and in compliance with the municipality's zoning ordinance with no violations of any ordinances.

  Seller represents and warrants that if there have been additions, improvements or alterations to the premises for which a building permit or certificate of occupancy is required by the applicable municipality, Seller will obtain and furnish such permits and certificates providing the cost of obtaining such does not exceed $50,000.00, if so Seller may return Purchasers deposit and cancel contract;

  B.  All notices of violations of laws or municipal ordinances, orders or requirements noted in or issued by the Zoning Administrator's Office and/or Building Inspector, Fire, Labor, Health, or other State or municipal body having jurisdiction over the subject premises as of the date of title conveyance, shall be complied with by Seller and the premises shall be conveyed free of same. Seller shall furnish Purchaser with an authorization to make the necessary searches.

## 3. CONDITION OF PREMISES/INSPECTIONS

At the time of closing, the premises will be in the similar physical condition as at the time of contract, reasonable wear and tear excepted. The Seller shall maintain the premises during the contract period in the customary manner including, but not limited to, the repair of broken property in and about the premises, care of grounds and shrubbery, grass cutting and snow removal, as applicable.

## 4. ADJACENT STREETS

The obligation of Purchaser to complete this transaction is contingent upon Purchaser having insurable vehicular access to a publicly owned and maintained street.

## 5. MAIL Notices

Any written notice herein, to be given by the Purchaser or Purchaser's attorney, to the Seller or Seller's attorney, shall be deemed to have been given to the Seller or the Seller's attorney by mailing the paper to him or his attorney, at the address designated by him for that purpose, or if none is designated, at his last known address; said notice by mail shall be complete upon deposit of the paper enclosed in a postpaid properly-addressed wrapper, in a post office or official depository under the exclusive care and custody of the United States Post Office Department within the State; for a period of time prescribed by the contract as measured by notice to the purchaser of any event and such notice is by mail, five days shall be added to the prescribed period.

## 6. MODIFICATIONS TO CONTRACT

The base contract is hereby amended as follows:

Amend sales price to $1,050,000.00 with a deposit on contract of $50,000

Change closing date to on/or March 30, 2019
Delete prepayment penalty.

3

Provide that Purchase money mortgage shall be for $323,000(interest only at 4.5%)

Modify brokers commission to $42,000 (pursuant to note to be executed by purchaser at closing) and provide that the no *principal* shall be repaid to seller before the broker is paid in full

Modify section relating to Dutchess County lien to provide that this transaction is contingent upon an agreement with Dutchess County confirming that the total outstanding balance due Dutchess County is $160,000 and such payoff may be made by purchaser within one year of closing without any additional interest or fees and to confirm that there are no agreements with Dutchess County that would create a restriction on rentals

Seller to remove all debris in basement and back yard

## 7. RENT AND TENANCY

The Seller represents that the existing tenants rent are as set forth in the annexed leases ( copies of such leases are annexed hereto Exhibit A). The monthly rental and security deposits are as set forth in the annexed Exhibit B and the entire security deposit shall be transferred to Purchaser at the time of closing without reduction. The tenants are not now in default of their respective tenancy agreements and Seller agrees not to amend the rental amount or to enter into any new leases without Purchasers approval. This transaction is contingent upon Purchasers review and approval of the existing commercial lease. It shall also be a condition to closing that the existing residential leases be amended to confirm that such leases are for the current term with no more than a one year option to renew

## 8. ASSIGNMENT OF CONTRACT

Purchaser may assign this contract to a new entity in which purchasers are majority owners.

## 9. SERVICE CONTRACTS

Seller warrants and represents that there are no outstanding service contracts with any contractors for the plumbing, heating, electrical or maintenance.

## 10. COOPERATION FOR LIKE-KIND EXCHANGE

The Seller acknowledges that Purchaser have the option, at Purchaser's sole cost and expense, to perform an IRC Section 1031 tax-deferred exchange. Purchasers request Sellers cooperation in such an assignment of this Contract to a qualified intermediary by the Purchaser.

## 11. HAZARDOUS MATERIALS

The Seller warrants and represents that to the best of its knowledge, no hazardous waste products or materials, including, but not limited to, asbestos, are contained within the building or upon the grounds. Furthermore, the Seller is unaware of any petroleum, leaks or spillage having occurred on the property on or within the property. This representation shall not survive closing of title.

## 12. UNDERGROUND STORAGE TANKS(USTS)

Seller represents that to the best of Seller's knowledge and belief that:
(i)there are no underground oil tanks servicing the premises; (ii) Seller never abandoned an oil tank at the premises; (iii) Seller has no actual knowledge of a prior owner abandoning an oil tank at the premises; (iv) Seller has no actual knowledge of a prior owner removing an in ground oil tank from the premises; and (v) Seller has no actual knowledge of an in ground oil tank leaking at the premises.

## 13. Counterparts and Signatures.

This Contact may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Portable Document Format (PDF) Copies and other electronic signatures of this Contract and any document executed in connection with this Contract (excluding closing documents) shall be binding and effective with the same force and effect as if they were original signatures of the parties. This Contract (and modification thereto) may be delivered by PDF attachment via email to the respective attorneys and shall be deemed given when delivered.

## 14. INCONSISTENCY

In the event any of the terms of this rider are different from, or inconsistent with, the terms of the contract or Seller's rider, the terms of Purchaser's rider shall govern. The execution of the printed form of the Contract of Sale to which this Rider is hereby made part is deemed execution of this Rider.

Purchaser                                                      Seller

Purchaser

_Courtney Smith Wiesmore_

Seller

484 Main Street Realty Corp.
By: Massimo Maffei

2/6/19

_____                    _____
Courtney Smith Wiesmore                            484 Main Street Realty Corp.
                                                   By: Massimo Maffei

_____  	_____ 2/16/19
Courtney Smith Wiesmore   	484 Main Street Realty Corp.
 	By: Massimo Maffei

# MEMORANDUM OF PURCHASE MONEY MORTGAGE

Terms:

Upon closing of title to the Premises Purchaser shall give and Seller shall hold and record a Promissory Note and Mortgage (Purchase Money Mortgage) for the sum of THREE HUNDRED AND SEVENTY THOUSAND 00/00 ($370,000.00) dollars.

Interest only monthly payments are to be paid on the note at the per annum interest rate of FOUR and ONE-HALF (4.5%) percent amortized over twenty-five (25) years for a monthly payment of TWO THOUSAND NINE HUNDRED AND FORTY SIX ($2,946.00)[1] dollars.

The Purchase Money Mortgage shall have a balloon payment of THREE HUNDRED AND SEVENTY THOUSAND 00/00 ($370,000.00) dollars due on ................ That being TEN (10) years (120 months) after commencement.

Purchaser may not prepay the Purchase Money Mortgage for the first TWELVE (12) months after commencement date of the Purchase Money Mortgage. There shall be no prepayment penalty after the first TWELVE MONTHS.

This Purchase Money Mortgage shall be subordinate to the Existing Mortgages held by **Dutchess County**.

This Purchase Money Mortgage shall also be subordinate to the real estate broker's commission owed by Seller to **Gate House Realty** of $44,000.00. The commission shall be repaid before any payments are made to Seller on this Purchase Money Mortgage.

---

[1] Rounded up to the nearest one hundreth of a dollar amount from $45.91 to $46.00

| | | | 4316 |
|---|---|---|---|
| Lyons & Supple, Attorneys at Law<br>IOLA Account<br>5 Cliff Street<br>Beacon, NY 12508<br>845.831.1234 | **M&T** Bank<br>10-4/220 | | 2/15/2019 |

PAY TO THE ORDER OF   BRIAN MC CAFFREY, AS ATTORNEY                                            $ **50,000.00

Fifty Thousand Only******                                                                                                    DOLLARS

PAUL B SUPPLE
AUTHORIZED SIGNATURE

MEMO   WIESMORE FROM 484 MAIN ST

⑈004316⑈  ⑆022000046⑆   1112666836⑈

# LYONS & SUPPLE

ATTORNEYS AT LAW
5 CLIFF STREET, P.O. BOX 510
BEACON, N.Y. 12508-0510

| | | |
|---|---|---|
| JOHN L. SUPPLE<br>PAUL B. SUPPLE<br>GREGORY D. SUPPLE *<br><br>JAMES J. LYONS, D.O.D<br><br>*NY & CAL BAR | OFFICE (845) 831-1234<br>FAX (845) 831-2268<br>PAUL@LYONS-SUPPLE.COM | **WAPPINGERS FALLS OFFICE**<br>92 E. Main St., P.O. Box 46<br>Wappingers Falls, N.Y. 12590<br>(845) 297-0600<br>(845) 297-8877<br><br>**Please reply to:**<br>(x) BEACON<br>( ) WAPPINGERS |

February 15, 2019

Brian McCaffrey, Esq.
88-18 Sutphin Blvd. 1st Floor
Jamaica, NY 11435

**Re: Wiesmore from 484 Main Street Realty Corp
File No. 18413**

Dear Mr. McCaffrey:

Enclosed herewith please find two (2) partially executed copies of the Contract of Sale, together with the Rider in connection with the above referenced transaction. If all are agreeable, please have your clients sign and return one (1) fully executed contracts to my office.

Also, enclosed please find check #4316 in the amount of fifty thousand ($50,000.00) dollars, which sum represents the down payment to be held in escrow pending closing of title.

If you have any questions, please do not hesitate to contact our office.

Very truly yours,


PAUL B. SUPPLE
PBS/rv
*Enclosures